UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:

DBSI Sheridan, LLC                               CASE NO.  11-10384-RBR

                              .                  Chapter 11
        Debtor.
_____/

### DEBTOR'S EMERGENCY MOTION FOR AN ORDER (A) AUTHORIZING DEBTOR (1) TO USE CASH COLLATERAL ON AN INTERIM BASIS PURSUANT TO 11 U.S.C. § 363, AND (2) TO PROVIDE ADEQUATE PROTECTION IN CONNECTION THEREWITH PURSUANT TO 11 U.S.C. § 361, AND (B) SETTING A FINAL HEARING <u>PURSUANT TO BANKRUPTCY RULE 4001</u>

(**Emergency Hearing Requested**)

**The above-captioned debtor and debtor-in-possession (the "Debtor") requests an emergency interim cash collateral hearing in this matter on or before January 13, 2011 in order to ensure that Debtor is able to continue as a going concern.  As an operating entity managing a commercial building, Debtor requires immediate use of its cash collateral to maintain its value, the building, and prevent the loss of tenants. Debtor respectfully requests that the Court waive the provisions of Rule 9075-1(B) of the Local Rules for the United States Bankruptcy Court for the Southern District of Florida, which require an affirmative statement that a *bona fide* effort was made in order to resolve the issues raised in this motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.**

DBSI Sheridan, LLC ("Sheridan" or "Debtor"), by and through undersigned counsel, hereby files this Emergency Motion for an Order (A) Authorizing Debtor (1) to use Cash Collateral on an Interim Basis Pursuant to 11 U.S.C. § 363 and (2) to Provide Adequate Protection in Connection

1

Therewith Pursuant to 11 U.S.C. §361, and (B) Setting a Final Hearing Pursuant to Bankruptcy Rule 4001 (the "Motion"). In support of the Motion, Debtor relies on the Declaration of Todd Mikles in Support of Chapter 11 Petitions and First Day Motions to be filed with this Court prior to the hearing on this Motion. In further support of this Motion, Debtor respectfully represent as follows:

## BACKGROUND

**A.    The Chapter 11 Filing**

1. On January 7, 2010 (the "Petition Date"), Debtor filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since that time, Debtor has operated as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. As of the date hereof, no creditors' committee has been appointed in this case. In addition, no trustee or examiner has been appointed.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. The statutory predicates for the relief requested herein are Sections 361 and 363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rule of Bankruptcy Procedure.

**B.    Background and Business Operations**

5. Sheridan is the owner and operator of an approximately 110,417 square foot office plaza, Sheridan Office Plaza I & II ("Phase I" and "Phase II," respectively), located at 7261 and 7369 Sheridan Street, Hollywood, FL 33024, (together, the "Property"). The Property is comprised of two, three-story office buildings situated on a 7.07 acre commercial zoned site. The buildings were

constructed in two phases with Phase I completed in 1992 and Phase II completed in 2000. The Property's day-to-day operations are handled by Phoenix Real Estate Group pursuant to a certain agreement with Sheridan.

6. Sheridan's primary financing appears to be Bank of America ("BOA"),[1] which alleges that it holds a note in the current outstanding amount of $9.67 million dollars (the "BOA Note"). BOA asserts that the BOA Note is secured by a first position mortgage on the Property (the "BOA Mortgage," collectively with the BOA Note shall be referred to as the "BOA Loan"). The BOA Loan documents appear to have been originally executed on September 3, 2003.

7. As of the Petition Date, BOA had alleged a default under the BOA Loan and, after Sheridan was unable to work out a solution with BOA, BOA commenced a foreclosure action against Sheridan in Broward County, Florida (the "BOA Foreclosure Suit"). Within the BOA Foreclosure suit, BOA requested appointment of a receiver. This bankruptcy was filed shortly prior to the state court hearing regarding appointment of a receiver.

8. In support of its application for the appointment of a receiver, BOA relied upon an appraisal prepared by CB Richard Ellis ("CBRE") at BOA's direction (the "Appraisal"). According to the Appraisal, the June 9, 2010 "as is" value of the Property was approximately $5.7 million dollars (nearly 4 million dollars less than the BOA Note). As a result, it appears that BOA is significantly undersecured.

9. Due to significant decline in the commercial real estate market in South Florida, the

---

[1] The BOA Note was originally executed in favor of Wachovia and subsequently transferred to Wells Fargo. While BOA brought a foreclosure complaint in the Circuit Court in and for Broward County, Florida, when the Debtor filed a motion to dismiss for failure to evidence that BOA was the holder of the BOA Note, BOA defended, not by providing evidence that it held the note, but rather argued that at the pleading stage it was required to do nothing more than aver that it held the Note.

Property has been challenged by low tenancy rates and thereby an inability to adequately finance certain repairs of the Property. Due to the loss of certain of its revenues and increased costs of maintenance, Sheridan was unable to continue making its monthly payment to BOA under the Loan Documents on or around February 2009.

10.     Fearing complete depletion of the value of the Property at an uncontrolled liquidation fire-sale/foreclosure auction, Sheridan commenced this bankruptcy proceeding. If Sheridan loses control of the income stream generated from the Property, it may cease to operate. Such a cessation of operations would have severe negative consequences to both the tenants of the Property and the going concern value of the Property.[2]

11.     By continuing to manage and maintain the Property during the pendency of the bankruptcy proceeding, Debtor believes that it can minimize the operating expenses and maximize the value of the Property, while avoiding the additional expense of a receiver.

12.     Debtor anticipates a relatively rapid restructuring of its debt or, most likely, facilitating a controlled and adequately marketed public auction sale of the Property. Debtor is confident it can obtain a sale price greater than BOA's appraised value for the Property.

## CASH COLLATERAL AND THE RELIEF SOUGHT BY DEBTOR

13.     Any cash or cash equivalents, funds or proceeds of or from the Property may constitute BOA's cash collateral within the meaning of Section 363 of the Bankruptcy Code (the "Cash Collateral").

14.     However, BOA has yet to prove its entitlement to a perfected security interest in the Cash Collateral. To the extent BOA provides sufficient evidence to support its claim that it has a

---

[2] In state court, BOA has sought a receiver that would be strange to this Property, need to replace the property

properly perfected a secured interest in the Cash Collateral, BOA is entitled to adequate protection of such security interest and lien in accordance with 11 U.S.C. §§ 361 and 363.

15. In connection therewith, Debtor seeks the use of Cash Collateral in their business operations and, out of an abundance of caution, has agreed to provide adequate protection to BOA pursuant to the terms hereof in the form of post-petition replacement liens, to the same extent as its current lien, if any, in Debtor's cash collateral. In this regard, Debtor reserves its right to conduct additional discovery and investigation into the claims of BOA and to object to or otherwise dispute the amount, extent validity, and priority of BOA's claims to any interest in the Cash Collateral or the Property.

16. In connection with Debtor's use of Cash Collateral hereunder and to provide BOA with adequate protection in respect of Debtor's use of such Cash Collateral as well as for any decrease in the value of its interests in the Cash Collateral as of the Petition Date, Debtor has agreed, subject to approval of this Court, that BOA, shall have *nunc pro tunc* as of the commencement of the Chapter 11 case, (i) a replacement lien pursuant to 11 U.S.C. §361(2) on all property acquired or generated post-petition by Debtor to the same extent and priority and of the same kind and nature as BOA's pre-petition liens and security interests in the Cash Collateral.

17. Further, Debtor proposes to use the Cash Collateral strictly in accordance with the terms of that certain Budget prepared by Debtor and attached hereto as Exhibit "A" (the "Budget"). The Budget covers an approximate three month span beginning on the Petition Date and continuing through March 31, 2011. Debtor also requests that it be authorized: (i) to exceed any line item on the Budget by an amount equal to 15% of each such line item; or (ii) to exceed any line item by

---

manager that has several years of experience, incur additional administrative expenses, and require an additional

more than fifteen (15%) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10%) percent in the aggregate of the total Budget.

18. As set forth in the Budget, Debtor asserts that BOA's interest, to the extent it exists, in Cash Collateral is fully protected and will not erode or decrease by virtue of Debtor's use of such Cash Collateral. Notably, had BOA obtained relief of a receiver, the cash collateral would similarly have been utilized to maintain BOA's ultimate collateral, the Property. Here, Debtor also proposes to maintain the Property so that it can result in a maximum value and recovery for all parties, including BOA. Due to the stub-month portion of January, the Budget demonstrates a negative cash flow. To the extent Debtor operates at similar levels for an additional month, the cash flow will be a net positive, as Debtor operates on a monthly positive cash flow beginning with its first full month budget, i.e. February, 2011.

19. Debtor submits that the protections afforded in this Motion fully protect BOA from Debtor's use of their Cash Collateral.

20. Finally, Debtor requests that the replacement liens pursuant to the terms hereof be at all times subject and junior to: (i) the payment of professional fees and expenses allowed under Sections 330 and 331 of the Bankruptcy Code of professionals engaged by Debtor and any official committee of unsecured creditors whose engagement has been approved by the Bankruptcy Court, but not to exceed $150,000 in the aggregate; and (ii) the fees of the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 (collectively, the "Carve Out").

21. Supplemental to the replacement liens provided to BOA hereunder, Debtor will furnish BOA with such financial and other information as required by the Loan Documents or other

---

layer of administrative expenses.

reports as BOA reasonably requests.

22. The replacement liens granted to BOA hereunder in connection with the use of the Cash Collateral shall be valid and perfected without the need for the execution or filing of any further documents or instruments.

23. Due to the exigency of the within bankruptcy, counsel for Debtor has only preliminarily reviewed the Loan Documents and associated loan and security instruments in connection with the loans from BOA. As such, while for purposes of this Motion Debtor assumes that BOA is properly perfected in the Cash Collateral, Debtor hereby reserves all of its rights to object to the extent, validity and priority of BOA's debt and the liens granted in connection therewith.

## APPLICABLE AUTHORITY FOR RELIEF REQUESTED

### A. The Court Should Enter an Order Authorizing the Continued Use of Cash Collateral Because Debtor is Providing BOA with Adequate Protection

24. Pursuant to the terms hereof, Debtor is providing and will provide adequate protection to BOA as contemplated and required by Sections 361, 363(c)(2)(B) and 363(e), respectively, and hereby seeks the Court's approval thereof. The Bankruptcy Code does not explicitly define "adequate protection," but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property. *See* 11 U.S.C. § 361. What constitutes adequate protection must be evaluated on a case-by-case basis. *In re Swedeland Dev. Group Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (*citing In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. l987)); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985).

25. Adequate protection is meant to ensure that the secured lender receives the value for

which it originally bargained. *Swedeland*, 16 F.3d at 564 (*citing O'Connor*, 808 F.2d at 1396) ("the whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which he bargained pre bankruptcy"). Courts have noted that "the essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing . . . and the confirmation." *In re Arriens*, 25 B.R. 79, 81 (Bankr. D.Or. 1982). The focus of the requirement is to protect a secured creditor from diminution in value during the use period. *See In re Kain*, 86 B.R 506, 513 (Bankr. W.D. Mich.1988); *In re Becker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

26.     Debtor's requested use of Cash Collateral and the protections afforded to BOA herein, including replacement liens, reporting, and reinvestment in BOA's ultimate collateral, i.e. the Property, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of BOA's alleged collateral.

>     *(i)     The Use of Cash Collateral Will Preserve Debtor's Going Concern Value, Which Will Inure to the Benefit of the Landlord and All Other Creditors*.

27.     The continued operation of Debtor's business will preserve the Property's value, enable Debtor to capitalize on that value through a reorganization strategy or sale, and ultimately enable Debtor to rapidly redistribute such value. However, as discussed above, if Debtor is not allowed to use Cash Collateral, its business operations will be substantially interrupted and will likely shut down, resulting in deterioration of the Property and likely loss of tenants. Such a result has expansive negative consequences for Debtor, BOA, and all of Debtor's creditors.

28.     It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984).

29.     Accordingly, courts authorize the use of cash collateral to enhance or preserve the debtor's going concern value. For example, in *In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa 1982), the court allowed a debtor to use cash collateral where the secured party was undersecured, finding that the use of cash collateral was necessary to the debtor's continued operations and the creditor's "secured position can only be enhanced by the continued operation of the [debtor's business]." *Id*. at 460; *see also Federal Nat. Mort. v. Dacon Bolingbrook Assoc.*, 153 B.R. 204, 214 (N.D. Ill. 1993) (security interest protected to extent debtor reinvested rents in operation. and maintenance of the property); *In re Constable Plaza Assoc.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor's reinvestment of rents to maintain and operate office building "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage"); *In re Dynaco Corp.*, 162 B.R. 389, 395-96 (Bankr. D.N.H. 1983) (finding that the alternative to the debtor's use of cash collateral, termination of its business, would doom reorganization and any chance to maximize value for all creditors); *In re Karl A. Neise. Inc.*, 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on post-petition property acquired by debtor; debtors can use cash collateral "in the normal operation of their business").

30.     As discussed above, Debtor will use Cash Collateral in the ordinary course of its business to, among other things, continue to operate and maintain the Property and serve tenant needs, thereby solidifying the prospects of a successful reorganization. If Debtor cannot continue to

use Cash Collateral, it will likely be forced to cease operations and convert the case to Chapter 7. This cessation would irreparably damage Debtor's business by causing, among other things, tenant defections, lost revenues, loss of business reputation, Property damage, and even worse, potentially leaving the patients of certain of the medical profession tenants without adequate remedy and forcing certain of its other tenants, including the Sheriff of Broward County and the Department of Veterans Affairs, to expend significant resources to relocate. By contrast, granting authority will allow Debtor to maintain operations and preserve the going-concern value of its business, which will inure to the benefit of BOA and all other creditors.

> **(ii)    BOA is Adequately Protected by the Grant of Replacement Liens on Post Petition Assets.**

31.    The Bankruptcy Code expressly provides that "granting a replacement lien is a means of adequate protection." 11 U.S.C. § 361(2). Granting replacement liens provides ample adequate protection of the secured creditor's interest in cash collateral. *See e.g. In re O'Connor*, 808 F.2d at 1393; *In re Dixie-Shamrock Oil & Gas. Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984). Debtor will adequately protect BOA's interests in Cash Collateral by, among other things, providing post-petition security interests in Debtor's assets of the same type as BOA held pre-petition to the extent Debtor's use of Cash Collateral results in a post-petition decrease in the value of the collateral securing BOA's claims. Such post-petition security interests will be of the same validity and priority as BOA's pre-petition liens and security interests.

**Emergency Hearing Requested**

32.    Debtor respectfully requests that the Court set this Motion for an interim cash collateral hearing on an expedited basis. There is a high likelihood of immediate and irreparable

harm to Debtor and the estates if Debtor cannot use the Cash Collateral pending a final hearing hereon. Therefore, Debtor respectfully requests a hearing on or before January 13, 2011.

**WHEREFORE**, Debtor, respectfully request that the Court enter a form of order substantially similar to that set forth as Exhibit B hereto: (A) authorizing Debtor (i) to use the Cash Collateral of BOA pursuant to the terms set forth above and in accordance with the Budget, (ii) to grant the replacement liens set forth above in connection with the use thereof, and (B) setting a final hearing hereon fourteen (14) days after the entry of an interim order on this Motion, and for such other and further relief as the Court deems just and proper.

Dated: January 10, 2011

Respectfully Submitted,

MESSANA STERN, P.A.
*Counsel for DBSI Sheridan LLC*
401 E. Las Olas Blvd., Suite 1400
Ft. Lauderdale, Florida 33301
Office Tel. No. 954-712-7400
Facsimile: 954-712-7401
e-mail: tmessana@mws-law.com

By: __Thomas M. Messana_____
       Thomas M. Messana, Esq.
       Florida Bar No. 991422
       Scott Underwood, Esq.
       Florida Bar No. 0730041
       Laura Coffy, Esq.
       Florida Bar No. 0017522
       Brett D. Lieberman, Esq.
       Florida Bar No. 69583

# Exhibit A
# Proposed Budget

Schedule Of Prospective Cash Flow
In Inflated Dollars for the Fiscal Year Beginning 1/1/2011

| For the Months | Month 1<br>Jan-2011 | Month 2<br>Feb-2011 | Month 3<br>Mar-2011 | Total |
|---|---:|---:|---:|---:|
| Scheduled Base Rental Revenue | 80,756 | 103,106 | 103,108 | 286,970 |
| TI Rent Sunrise Pulmonary | 1,316 | 1,316 | 1,315 | 3,947 |
| Expense Reimbursement Revenue Inc. CAM | 5,023 | 9,991 | 9,990 | 25,004 |
| Effective Gross Revenue | 87,095 | 114,413 | 114,413 | 315,921 |
| Operating Expenses | | | | |
| Management Fee | | 5,721 | 5,720 | 11,441 |
| Property Taxes | 0 | 0 | 0 | 0 |
| Insurance | 9,049 | 9,049 | 9,051 | 27,149 |
| Office Supplies | 25 | 25 | 25 | 75 |
| Postage & Courier | 85 | 85 | 85 | 255 |
| License, Fees & Permits | 18 | 18 | 17 | 53 |
| Phase I Electric | 11,748 | 11,748 | 11,749 | 35,245 |
| Water & Sewer | 1,411 | 1,411 | 1,412 | 4,234 |
| Telephone | 796 | 796 | 796 | 2,388 |
| Trash Disposal | 795 | 795 | 795 | 2,385 |
| Landscaping | | 2,902 | 2,902 | 5,804 |
| Security | 2,024 | 2,024 | 2,024 | 6,072 |
| Janitorial | 3,876 | 3,876 | 3,875 | 11,627 |
| Pest Control | 568 | 568 | 567 | 1,703 |
| Exterior Maintenance | 2,490 | 2,490 | 2,490 | 7,470 |
| Interior Maintenance | | 2,148 | 2,147 | 4,295 |
| Elevator | 799 | 799 | 798 | 2,396 |
| Plumbing & Electrical | 35 | 35 | 36 | 106 |
| HVAC | 1,113 | 1,113 | 1,114 | 3,340 |
| Parking Lot | 487 | 487 | 487 | 1,461 |
| Total Operating Expenses | 35,319 | 46,090 | 46,090 | 127,499 |
| Net Operating Income | 51,776 | 68,323 | 68,323 | 188,422 |
| Leasing & Capital Costs | | | | |
| Tenant Improvements | | | | 0 |
| Leasing Commissions | | | | 0 |
| Total Leasing & Capital Costs | 0 | 0 | 0 | 0 |
| Cash Flow Before Debt Service | $51,776 | $68,323 | $68,323 | 188,422 |
| Portfolio Expenses | | | | |
| Asset Management Fee | | 1,716 | 1,716 | 3,432 |
| Bank Charges | 42 | 42 | 41 | 125 |
| Legal & Accounting | | | | 0 |
| Professional | 40,000 | 40000 | 40000 | 120,000 |
| General Contingency | 461 | 461 | 461 | 1,383 |
| Caulking 7261 | 12,000 | 12,000 | 12,000 | 36,000 |
| Balcony Repair | 10,000 | 10,000 | 10,000 | 30,000 |
| Net Cash Flow | ($10,727) | $4,104 | $4,105 | ($2,518) |

# Exhibit B
# Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:

DBSI Sheridan, LLC,                                           CASE NO.  11-10384-RBR

                                .                                           Chapter 11
Debtor and Debtor-in-Possession.
_____/

**INTERIM ORDER (A) AUTHORIZING DEBTOR (1) TO USE CASH COLLATERAL
ON AN INTERIM BASIS PURSUANT TO 11 U.S.C. § 363,
AND (2) TO PROVIDE ADEQUATE PROTECTION IN CONNECTION
THEREWITH PURSUANT TO 11 U.S.C. § 361, AND (B) SETTING
<u>A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001</u>**

      This matter came before this Court on _____, upon the motion (the "Motion")[3] of

DBSI Sheridan, LLC ("Sheridan" or "Debtor"), as debtor and debtor-in-possession in the above-

captioned case, for entry of an Order (A) Authorizing the Debtor (1) to Use Cash Collateral on an

---

[3]    Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

14

Interim Basis Pursuant to 11 U.S.C. § 363 and (2) to Provide Adequate Protection in Connection Therewith Pursuant to 11 U.S.C. §361, and (B) Setting a Final Hearing Pursuant to Bankruptcy Rule 4001.  The Court finding that it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); the relief requested in the Motion is in the best of interests of the Debtor, its estate and creditors; proper and adequate notice of the Motion and the hearing thereon has been given and that no other or further notice is necessary; and upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.  Accordingly, it is

ORDERED:

1. The Motion is GRANTED.

2. The Debtor is authorized to use Cash Collateral, as defined in 11 U.S.C. §363(a) and in the Motion, on a preliminary basis through the later of March 31, 2011, or the date of the hearing set forth below and in accordance with the Budget attached to the Motion.

3. The Debtor shall be authorized: (i) to exceed any line item on the Budget by an amount equal to fifteen percent (15%) of each such line item; or (ii) to exceed any line item by more than fifteen percent (15%) so long as the total of all amounts in excess of all line items for the Budget do not exceed ten percent (10%) in the aggregate of the total Budget.

4. As adequate protection for the extent of the Debtor's use of cash collateral pursuant hereto, BOA shall have *nunc pro tunc* as of the commencement of the Chapter 11 case, a replacement lien pursuant to 11 U.S.C. §361(2) on all property acquired or generated post-petition by Debtor to the same extent and priority and of the same kind and nature as BOA's pre-petition liens and security interests in the Cash Collateral

5. Upon ten business days prior written notice to Debtor and Debtor's counsel, Debtor will furnish BOA with such reasonable financial and other information as required by the Loan Documents.

6. The replacement liens granted to BOA shall be subject and junior to: (i) the payment of professional fees and expenses allowed under Sections 330 and 331 of the Bankruptcy Code of professionals engaged by Debtor and any official committee of unsecured creditors whose engagement has been approved by the Bankruptcy Court, but not to exceed $150,000 in the aggregate; and (ii) the fees of the Office of the United States Trustee pursuant to 28 U.S.C. § 1930.

7. The security interests and liens granted herein in connection with the use of Cash Collateral shall be valid and perfected without the need for the execution or filing of any further documents or instruments.

8. This Order, together with the authorization to use Cash Collateral and the granting of replacement liens shall be with a full reservation of the rights of Debtor, the estate, and any committee to contest the extent, validity and priority of the debt owed, and liens granted to BOA.

9. **A further hearing, which may be a final hearing, on the relief sought hereunder shall be held on _____ at _____a.m./p.m.** at the U.S. Bankruptcy Court, Southern District of Florida, Fort Lauderdale Division, 299 E. Broward Blvd., Fort Lauderdale, FL 33301, Room \_\_\_. The Debtor shall serve copies of this Order upon the U.S. Trustee, all counsel of record, the secured creditors, and the top 20 unsecured creditors of the Debtor via U.S. mail immediately upon receipt hereof, which shall constitute good and sufficient notice of the hearing.

###

Submitted by:
Thomas M. Messana, Esq.

MESSANA STERN, P.A.
*Counsel for DBSI Sheridan LLC*
401 E. Las Olas Blvd., Suite 1400
Ft. Lauderdale, Florida 33301
Office Tel. No. 954-712-7400
Facsimile: 954-712-7401
e-mail: tmessana@mws-law.com

Copy to: Thomas M. Messana, Esq.  (Attorney Messana is directed to serve a conformed copy of this Order on all parties in interest)